THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DYBO, INC.                              *              CASE NO. 3:24-cv-303

    Plaintiff,                          *              JUDGE WALTER H. RICE

v.                                      *

ERIE INSURANCE CO.                      *

    Defendant.                          *

---

DECISION AND ENTRY OVERRULING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT ERIE INSURANCE COMPANY (DOC. #36); CAPTIONED CASE SHALL PROCEED TO TRIAL

---

This matter is before the Court on the Motion for Summary Judgment of Defendant Erie Insurance Company (Doc. #36).  For the reasons set forth below, the Motion is OVERRULED.

I.      **Factual Background and Procedural History**

    A.      **Undisputed Facts**

"The matter stems from an insurance claim for damage to a one-story repurposed bowling alley currently operating as a dog kennel located at 4901 Linden Ave., Dayton, Ohio 45432 (the 'Property') caused by storms that occurred on February 27, 2023, and March 3, 2023 (the 'Storms')."  (Memo. in Opp., Doc. #45, PAGEID 1006, citing First Am. Compl., Doc. #31, PAGEID 328-31, ¶¶ 8-13).  The Storms lifted the northwest corner of the roof of the Property, owned by Plaintiff Dybo, Inc., while also cracking the roof's liquid-applied roof membrane ("LARM"),

Storms lifted the northwest corner of the roof of the Property, owned by Plaintiff Dybo, Inc., while also cracking the roof's liquid-applied roof membrane ("LARM"), "which allowed rainwater to intrude into the Property." (*Id.*, citing W. Gerbick Dep., Doc. #42-1, PAGEID 834, 835, 851-52, 858). Additionally, one or more of the metal roof panels have been permanently bent or deformed, and "cracking or compromise of the LARM coating caused by wind would constitute . . . damage that would need to be repaired in order to put the roof back into its pre-loss condition." (*Id.* at PAGEID 1007, citing Doc. #42-1, PAGEID 834-35, 846-47; B. Wright Dep., Doc .#46-1, PAGEID 1032)).

The parties disagree as to whether the LARM cracked because of the wind uplift, hailstones, and water intrusion, as argued by Plaintiff's experts (E. Etienne Dep., Doc. #39-1, PAGEID 645-48; P. Mayfield Dep., Doc. #41-1, PAGEID 769-71, 776, 780; Doc. #46-1, PAGEID 1032), or "improper application of the LARM coating, deterioration of the coating, or movement of panels from expansion and contraction due to heat or vibrations from normal wind events[,]" as opined by Defendant's expert. (Doc. #45, PAGEID 1007-08, citing Doc. #42-1, PAGEID 835-36, 840-41, 844-45). According to Plaintiff's expert Elijah Etienne, an entirely new LARM surface must be installed on the entire roof, and that the permanently bent roof panels on the northwest corner of the roof must be replaced. (Doc. #39-1, PAGIEID 639, 646-47). Thus, Plaintiff argues, "a full roof replacement is the only viable method to restore the Property's roof to its pre-loss condition." (Doc. #45, PAGEID 1011). The bid for replacing the roof estimated the cost at $398,483.87,

2

and Plaintiff's experts "calculate a total estimated cost of $610,976.48 to repair all damage caused by the Storms" beyond the roof replacement (*Id.*, citing Doc. #39-1, PAGEID 642-45; Doc. #46-1, PAGEID 1030-32, 1038).

Plaintiff filed a claim with Defendant under the operative Commercial General Liability Policy No. Q61-0059581 ("the Policy") (Doc. #36, PAGEID 367-469), which Defendant assigned as Claim No. A00004842219. (First Am. Compl., Doc. 31, PAGEID 331, ¶ 14). Defendant's inspector estimated the total damage to the Property at $13,040. (Doc. #36, PAGEID 350). However, Defendant declined coverage based on the Policy's "anti-concurrent causation ('ACC')" clause, under which coverage is excluded if damage to the Property was caused by multiple factors simultaneously, and one of those factors is excluded from coverage. (*Id.* at PAGEID 350-52, quoting Doc. #36, PAGEID 395-99). Defendant's denial was based on its conclusions that:

> [T]he causes of roof damage and water intrusion were a combination of deterioration and lack of timely and proper maintenance, the damage could not have been caused by a recent or singular event, no severe weather events sufficient to have caused the alleged damage had occurred in the area in the previous year, and the roof could be easily repaired rather than replaced by re-fastening the roof panels and reapplying a weather barrier.

(*Id.* at PAGEID 353). Defendant notes that the Policy's exclusions include:

> [D]eterioration or depreciation; faulty, inadequate or defective design, specifications, workmanship, repair, construction, or renovating; faulty, inadequate or defective materials used in repair, construction, or renovation; faulty, inadequate or defective maintenance; and neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss. The insurance contract also expressly and specifically excludes from

3

insurance coverage all loss or damage caused by wear and tear, rust, or corrosion; inherent vice; latent or hidden defect; and cracking, shrinking, bulging or expansion of roofs.

(*Id.* at PAGEID 360).

Based on Defendant's interpretation of the Policy, Defendant issued Plaintiff a partial denial letter on or about October 23, 2023, denying all but $13,010 of the Claim. (Doc. #31, PAGEID 332, ¶ 21). Thereafter, Plaintiff retained Mayfield Building Envelope Consultants ("MBEC") to inspect the Property. In September 2024, MBEC issued a report, identifying the Storms as the cause of the Property's damage, and opining only that full replacement of the roof could return the Property to pre-loss condition. (*Id.* at PAGEID 332-33, ¶¶ 23-24).

## B. Litigation History

On November 22, 2024, Plaintiff filed its initial Complaint (Doc. #1), and the operative First Amended Complaint on December 9, 2025. (Doc. #31). On January 6, 2026, Defendant moved for summary judgment, arguing that Plaintiff's failure to inspect and maintain the Property properly was at least a partial cause of the damage to the Property; consequently, Defendant claims, the ACC applies, and as a matter of law, its denial of coverage was proper. (Doc. #36, PAGEID 360 n.7, citing *Kiwi Hosp.-Cincinnati Central, LLC v. Princeton Excess & Surplus Lines Ins. Co.*, No. 1:22-cv-538, 2025 U.S. Dist. LEXIS 60588 (S.D. Ohio Mar. 31, 2025) (Barrett, J.); *Eloise Holdings, LLC v. Mt. Hawley Ins. Co.*, No. 1:23-cv-7513-GHW, 2025 U.S. Dist. LEXIS 44127 (S.D.N.Y. Mar. 11, 2025)). Specifically, Defendant asserts that the operative insurance policy "expressly and specifically excludes

4

from insurance coverage all loss or damage caused by wear and tear, rust, or corrosion; inherent vice; latent or hidden defect; and cracking, shrinking, bulging or expansion of roofs." (*Id.* at PAGEID 360).  Defendant claims that, despite the Building's age, Plaintiff did not order any independent inspection of it prior to or after purchase. (*Id.* at PAGEID 361).  Defendant further argues that, even if the roofing coating system is new, as Plaintiff claims, underneath the coating was "an old, dirty roof showing cracking from deterioration in the flood coat, a flood coat that was older than the ten years such a coat usually lasts, before a flood coat gets old, dries up, cracks, and allows water to enter underneath the coat." (*Id.*, citing Doc. #41-1, PAGEID 773).  Defendant asserts that, because (1) the deterioration was at least a partial cause of the damage, triggering the ACC, and (2) exclusions for wear and tear are enforceable under Ohio law, Defendant's declination was proper, and summary judgment is appropriate. (*Id.* at PAGEID 362-63, quoting *Murray v. Auto-Owners Ins. Co.*, 2015-Ohio-3295, ¶ 42, 40 N.E.3d 679 (6th Dist.); quoting *Kiwi Hosp.*, 2025 U.S. Dist. LEXIS 60588, *17-18, 22; citing *Kiwi Hosp.*, 2025 U.S. Dist. LEXIS 60588, *22-32; *Eloise Holdings*, 2025 U.S. Dist. LEXIS 44127).

In its memorandum *contra*, Plaintiff argues that Defendant's causation expert conceded that "winds from the Storms lifted the northwest corner of the Property's roof, which allowed rainwater to intrude into the Property[,]" and that two of Plaintiff's experts have also reached that conclusion. (Memo. in Opp., Doc. #45, PAGEID 1006, 1007, citing Doc. #39-1, PAGEID 639, 647-48, 652-53; Doc. #41-1, PAGEID 769-71, 776, 780; Doc. #42-1, PAGEID 834, 851, 852, 858).  Plaintiff claims

5

that another of its experts concluded that the uplift from the wind permanently damaged metal roof panels and allowed significant water intrusion. (*Id.* at PAGEID 1007, citing Doc. #39-1, PAGEID 645-46, 648; Doc. #46-1, PAGEID 1032). Moreover, Plaintiff asserts, Defendant's expert Gerbick testified that there was no building code violation with respect to the roof not being able to withstand a ninety-mile per hour, three-second wind gust, and that Gerbick could not state that the LARM was applied incorrectly. (*Id.* at PAGEID 1007-08, citing Doc. #42-1, PAGEID 836-37, 844, 849). Plaintiff argues that any degradation of the LARM is a direct result of the Storms, not from age or poor maintenance. (*Id.* at PAGEID 1008-09, citing Doc. #39-1, PAGEID 649; Doc. #42-1, PAGEID 837-38, 841-42; Doc. #46-1, PAGEID 1034-35). Finally, Plaintiff claims that there is no dispute that the roof, if covered, is a total loss and needs complete replacement. (*Id.* at PAGEID 1010-11, citing Doc. #39-1, PAGEID 639, 645-47; Doc. #42-1, PAGEID 847-48).

Plaintiff argues that all cases relied upon by Defendant are inapposite; in those cases, "there was not a factual dispute that the damages at issue were caused, in part, by excluded causes of loss." (Doc. #45, PAGEID 1012-13 (emphasis in original) (citations omitted)). Here, Plaintiff asserts, there are material factual disputes as to whether: (1) wind from the Storms caused permanent damage to the panels by uplifting the northwest corner; (2) the cracking on the LARM coating and at the metal seams of the roof was due to the uplifting from the Storms; (3) water came through due to perforations in the LARM from hail damage; and (4) whether "interior water damage" was "due to

6

water intruding through the northwest area of the roof that was uplifted and deformed, a hole created at the base of the electrical mast due to impact from wind, and through the cracking in the LARM coating." (*Id.* at PAGEID 1013). In fact, Plaintiff asserts, "damage which Erie's own expert agrees was caused by the Storms is sufficient to support a jury finding that [D]ybo is entitled to a full roof replacement under the Policy, which clearly presents a material question of fact for the jury to determine." (*Id.* at PAGEID 1014 (emphasis in original)). Specifically, Plaintiff argues that there are material disputes, which must be resolved in Plaintiff's favor at this stage, as to whether age-related deterioration or lack of maintenance caused the Property's damage; Plaintiff claims that, in light of such disputes, Defendant has not raised adequate grounds to invoke the ACC. (Id. at PAGEID 1015). Alternatively, Plaintiff claims that even if the ACC was properly invoked, there is sufficient testimony from its experts for a reasonable trier of fact to conclude that the damage was caused solely by the Storms, and that the ACC does not preclude coverage. (*Id.* at PAGEID 1015-16).

In Reply, Defendant argues that it is undisputed that at least some of the damage was caused from an excluded source, *e.g.,* "long-standing deterioration, pre-existing defects, improper installation, and inadequate maintenance," meaning that the ACC applies and Plaintiff's breach of contract claim fails a matter of law. (Doc. #48, PAGEID 1117). Specifically, Defendant notes that Plaintiff's expert, Etienne, concedes that at least some of the hail damage to the LARM and roof came from a 2011 storm. (*Id.* at PAGEID 1118, quoting Doc. #39-1, PAGEID

7

633, 648). Etienne also testified that, on portions of the roof, new LARM coating was applied directly over the old LARM, despite the fact that the new LARM coating will not bond properly in that situation. (*Id.* at PAGEID 1118-19, quoting Doc. #39-1, PAGEID 646-47, 653).

That expert testimony was also consistent with that of Defendant's expert, Wayne Gerbick, who testified that rivets had been used to attempt to repair the roof piecemeal, and that the pre-existing defects and lack of maintenance were at least a partial cause of the roof lifting and the intrusion of water. (Doc. #48, PAGEID 1120, citing Doc. #42-1, PAGEID 839-40). Moreover, Defendant argues that Gerbick's inspection revealed undisputed evidence that the roof cracked in random places, which is not what would happen through wind uplift, and that the deterioration of the LARM coating caused the underlying panels to get damaged. (*Id.* at PAGEID 1121, citing Doc. #42-1, PAGEID 834-35, 838). Defendant further claims that the wind during the Storms being modest "is an unrebutted fact[,]" and that the roof would have survived such wind undamaged had it been properly constructed and maintained. (*Id.* at PAGEID 1122). Specifically, Defendant notes that Etienne testified that it would take wind speeds of at least sixty miles per hour to peel back the roof panels. (*Id.*, quoting Doc. #39-1, PAGEID 634). Defendant reasons that, because the roof uplift was caused at least in part by poor maintenance and pre-existing defect, the ACC applies, and declination of coverage was proper as a matter of law. (*Id.* at PAGEID 1124-25, quoting Doc. #42-1,

8

PAGEID 846, 852; citing *Kiwi Hosp.*, 2025 U.S. Dist. LEXIS 60588; *Eloise Holdings*, 2025 U.S. Dist. LEXIS 44127; Doc. #42-1, PAGEID 834-35).

The matter is now ripe for decision.

## II.   Legal Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Once the burden has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond the pleadings,"

9

and present some type of evidentiary material in support of its position.  *Celotex*, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."  *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

"Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party.  *Id.* at 255.  If the parties present conflicting evidence, a court may not decide which evidence to believe.  Credibility determinations must be left to the fact-finder.  10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE CIVIL § 2726 (3d ed. 1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties.  FED.R.CIV.P. 56(c)(3).  "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  If it so chooses, however, the court may also consider other properly presented materials in the record.  FED.R.CIV.P. 56(c)(3).

10

## III. Analysis

At the outset, the Court notes that the parties "present the classic battle of the experts, and it is up to a jury to evaluate what weight and credibility each expert opinion deserves." *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (cleaned up), quoting *Cadmus v. Aetna Cas. & Surety Co.*, No. 95-5721, 100 F.3d 956 (TABLE), 1996 WL 652769 (6th Cir. Nov. 7, 1996). The court in *Phillips* reversed the district court's grant of summary judgment because,"[p]ut simply, the magistrate judge engaged in an extensive analysis of the parties' expert reports and found Claudy's conclusions more credible. This approach of weighing the credibility of the competing expert reports amounts to improper fact-finding." *Id.*, citing *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 449 (6th Cir. 2002).

With *Phillips* as binding precedent, resolution of the Motion is straightforward. There is no dispute that deterioration, "[w]ear and tear, rust, or corrosion[,]" or negligent maintenance and upkeep with respect to the Property is considered an exclusion, and that the ACC triggers a declination of coverage if one of the excluded causes is even slightly responsible for the Property loss. (Doc. #36, PAGEID 395-99). Nor is there any dispute that the northwest corner of the roof was lifted up at the same time of the Storms, and that concurrent with the Storms and uplift, the underlying roof panels "flapped around," the LARM coating cracked, and water entered the Property. (Doc. #42-1, PAGEID 834, 851-52, 858). It is similarly undisputed that several of the metal panels have been permanently bent from the wind. (*Id.* at PAGEID 834-35, 846-47).

11

However, there is significant dispute as to whether any of the excluded conditions caused any part of the damage, or whether the Storms set forth an unbroken causal chain that resulted in approximately $1 million in damage. Specifically, there are material disputes as to whether:

1. The LARM coating was properly applied in the first place (Doc. #42-1, PAGEID 836-37);

2. The LARM coating, properly applied or not, had naturally deteriorated prior to the Storms (Doc. #39-1, PAGEID 649; Doc. #41-1, PAGEID 777; Doc. #42-1, PAGEID 837; Doc. #46-1, PAGEID 1032-33);

3. Inadequate maintenance on the roof (or a complete lack thereof) had contributed to the damage (Doc. #39-1, PAGEID 649; Doc. #46-1, PAGEID 1034-35); and

4. The wind from the Storms was the sole cause of the roof uplift, which in turn caused water intrusion into the Property, and the sole cause of "a hole created by the electrical mast being impacted[.]" (Doc. #45, PAGEID 1009, citing Doc. #46-1, PAGEID 1028-29, 1032).

Defendant notes that Etienne, Plaintiff's roofer and expert, testified that there was both old (2011) and new (Storms) hail damage on the roof. (Doc. #48, PAGEID 1118, quoting Doc. #39-1, PAGEID 633, 648). However, Defendant does not present undisputed evidence that the 2011 hail damage, even if not fully repaired, was a definitive cause, in whole or in part, of the Property damage. Similarly, while Defendant's expert, Gerbick, testified that the LARM cracking was not consistent with wind damage, he merely concluded from that observation that the cracking "was not *necessarily* caused by wind." (Doc. #42-1, PAGEID 842 (emphasis added)). While Gerbick also testified that the trim on the northwest

12

corner of the roof had failed due to poor maintenance and upkeep, and that that failure caused the roof to uplift in the face of modest winds (*id.* at PAGEID 852), Plaintiff's expert Wright testified that there had been previous maintenance done on the roof, "[a]nd again, it didn't leak before this storm. And then it, all of a sudden, did." (Doc. #46-1, PAGEID 1034). Thus, contrary to Defendant's argument, there *is* a "genuine issue of material fact disputing that there were defects and longstanding maintenance issues present in the roof before the dates of the two storms alleged to have caused damage." (Doc. #48, PAGEID 1124).

As Plaintiff rightly points out (Doc. #45, PAGEID 1012-13), the cases relied upon by Defendant are inapposite. In *Kiwi Hosp.*, experts for both the insurer and insured "indexed multiple examples of both" the property's "'wear and tear' [and] a lack of maintenance." 2025 U.S. Dist. LEXIS 60588, *22. In *Eloise Holdings*, the plaintiff did not respond to the defendant's motion for summary judgment, meaning that defendant's evidence "that the damage was made worse by, or sustained in connection with, faulty workmanship and inadequate repairs" was undisputed. 2025 U.S. Dist. LEXIS 44127, *17. Finally, in *Murray*, the insured did not offer any evidence from an expert or a third-party to contradict the affidavit of the insurer's contractor who remediated the damage. 2015-Ohio-3295, ¶¶ 2-4, 14-15. In short, none of the cases presented the battle of the experts that this Court faces. To resolve the threshold issue of causation would require the Court to weigh the evidence offered by the parties and the credibility of their experts,

13

which the undersigned simply cannot do at the summary judgement stage.

Accordingly, Defendant's Motion for Summary Judgment must be overruled.[1]

## IV.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment

(Doc. #36) is OVERRULED.  The captioned case shall proceed to trial.


IT IS SO ORDERED.

April 16, 2026

*Walter H. Rice*

WALTER H. RICE, JUDGE
UNITED STATES DISTRICT COURT

---

[1] Plaintiff has filed a Motion to Exclude the Testimony of Casey Davenport, Ph.D., Defendant's weather expert. (Doc. #44).  The Motion to Exclude arises under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm.* (*id.* at PAGEID 951, citing 509 U.S. 579 (1993)), and Plaintiff prays "that the Court exclude from evidence any expert opinion testimony by Casey Davenport, Ph.D., regarding the wind speeds occurring at the Property at issue in this case during the Storms and preclude Defendant's witnesses from relying upon any such opinions at trial." (*Id.* at PAGEID 953). As there would still be a material dispute of fact as to causation even if Davenport's report and deposition testimony were considered, the Court declines to rule on the Motion to Exclude at this time, and will address it at the Final Pretrial Conference. (Prelim. Pretrial Conf. Order, Doc. #17, PAGEID 268).

14